| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _____ ☐ Agent  ☐ Addressee<br>B. Received by (Printed Name)  C. Date of Delivery<br>         9-16 |
| 1. Article Addressed to:<br><br>United Recovery Group<br>Registered Agent: Robert Bruce<br>4549 Francis Ave.<br>Chino, CA 91710<br><br>13-C-3721 | FILED<br>KENT<br>SEP 20 2013<br>JOHN L. MIDDLETON<br>D.C.<br><br>D. Is delivery address different from item 1? ☐ Yes<br>   If YES, enter delivery address below: ☐ No<br><br>3. Service Type<br>☒ Certified Mail   ☐ Express Mail<br>☐ Registered    ☒ Return Receipt for Merchandise<br>☐ Insured Mail  ☐ C.O.D.<br>4. Restricted Delivery? (Extra Fee)   ☒ Yes |
| 2. Article Number (Transfer from service label) | 7013 1090 0001 3623 5010 |
| PS Form 3811, February 2004  Domestic Return Receipt | 102595-02-M-1540 |

EXHIBIT B



| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _Linda A Smith_ ☐ Agent ☐ Addressee<br>B. Received by (Printed Name) C. Date of Delivery<br>SEP 17 2013 |
| 1. Article Addressed to:<br><br>Midland Funding, LLC<br>CSC-Lawyer's Incorporating Service Co.<br>421 W. Main<br>Frankfort, KY 40601<br><br>13-C-3721 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No<br>KENTON CIRCUIT<br>SEP 19 2013<br>JOHN C. MIDDLETON, D.C.<br><br>3. Service Type<br>☒ Certified Mail ☐ Express Mail<br>☐ Registered ☒ Return Receipt for Merchandise<br>☐ Insured Mail ☐ C.O.D.<br>4. Restricted Delivery? (Extra Fee) ☒ Yes |
| 2. Article Number (Transfer from service label) | 7013 0600 0002 3877 3797 |
| PS Form 3811, February 2004 | Domestic Return Receipt 102595-02-M-1540 |



Commonwealth of Kentucky
Kenton District Court
Div. 3
Case No. 13 C - 3721

Christine Anderson                                          PLAINTIFF

v.                          **COMPLAINT**

United Recovery Group     RAP                               DEFENDANTS
    Serve:
    Robert Bruce
    4549 Francis Ave
    Chino, CA 91710

Southwest Credit Systems, L.P.
Assumed name for
Southwest Credit Systems, Limited Partnership
    Serve:
    CT Corporation System
    306 W. Main St., Suite 512
    Frankfort, KY 40601

Midland Funding, LLC
    Serve:
    CSC-Lawyer's Incorporating
       Service Company
    121 W. Main
    Frankfort, KY 40601

\* \* \* \* \*

## INTRODUCTION

1. This is an action brought by a consumer for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*; and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1691 *et seq.*

## PARTIES

2. Plaintiff, Christine Anderson, is a citizen of the United States of America and of the Commonwealth of Kentucky residing in Kenton County, Kentucky. At all times, Ms. Anderson

is and was a "consumer" within the meaning of the FDCPA and FCRA.

3. Defendant, United Recovery Group ("URG"), is a foreign corporation, which has not registered with the Kentucky Secretary of State. URG's principal place of business is located in Ontario, CA.

4. URG regularly collects or attempt to collects debts owed or due or asserted to be owed or due another, and is a "debt collector" within the meaning of the FDCPA, as defined by 15 U.S.C. § 1692a(6).

5. Southwest Credit Systems, L.P. ("Southwest") is a foreign limited partnership that has registered to do business within the Commonwealth with its principal place of business located in Carrollton, TX.

6. Southwest regularly collects or attempt to collects debts owed or due or asserted to be owed or due another, and is a "debt collector" within the meaning of the FDCPA, as defined by 15 U.S.C. § 1692a(6).

7. Defendant, Midland Funding, LLC ("Midland"), is a Delaware limited liability company, which has registered with the Kentucky Secretary of State, and is engaged in the business of purchasing debt from creditors and collecting these debts in this state. Midland's principal place of business is located in San Diego, CA.

8. Midland is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

## BACKGROUND

### I. Facts Relating to URG

9. On March 29, 2013, Ms. Anderson filed a Chapter 7 Bankruptcy petition in the Bankruptcy Court for the Eastern District of Kentucky in Case No. 13-20612.

10. The bankruptcy court entered an order of discharge on July 5, 2013.

11. On August 2, 2013, Ms. Anderson reviewed her consumer report prepared by Experian.

12. Her consumer report showed that URG made a hard credit inquiry for her credit report on May 20, 2013.

13. The FCRA does not expressly create a distinction between "hard" and "soft" credit inquiries.

14. Rather, consumer reporting agencies classify every user's request to see a consumer report as either a "hard" or "soft" credit inquiry, depending on the type of inquiry made by the requesting party.

15. As explained on the Credit Karma website, which is run by Trans Union:

> There are two kinds of inquiries that can occur on your credit report: hard inquiries and soft inquiries. While both types of credit inquiries enable a third party, such as you or a lender, to view your credit report, only a hard inquiry can negatively affect your credit score.
>
> **What is a Hard Inquiry?**
> Hard inquiries occur when a financial institution, such as a lender or credit card issuer, checks your credit report when making a lending decision. For example, hard inquiries commonly take place when a consumer applies for a loan, credit card, or mortgage. **You typically have to authorize a hard inquiry.** Most important to note, **hard inquiries will lower your credit score by a few points and remain on your credit report for two years.** As time passes, the damage to your credit score will decrease until the hard inquiry falls off your credit report.
>
> **What is a Soft Inquiry?**
> Soft inquiries occur when a person or company checks your credit report as a background check, such as when a potential employer checks your credit, when you are "pre-approved" for credit card offers, and when you check your own credit score. **A soft inquiry can occur without your permission.** Soft inquiries may be

-3-

recorded in your credit report, depending on the credit bureau, **but they won't affect your credit score in any way.**

https://www.creditkarma.com/article/hard_inquiries_and_soft_inquiries (visited July 26, 2013)

(emphasis added).

16. And is explained on the myfico.com[1] website.

> Credit inquiries are requests by a "legitimate business" to check your credit.
>
> As far as your FICO® score is concerned, credit inquiries are classified as either "hard inquiries" or "soft inquiries"--**only hard inquiries have an affect on your FICO score.**
>
> Soft inquiries are all credit inquiries where your credit is NOT being reviewed by a prospective lender. These include inquiries where you're checking your own credit (such as checking your score in myFICO), credit checks made by businesses to offer you goods or services (such as promotional offers by credit card companies), or inquiries made by businesses with whom you already have a credit account.
>
> **Hard inquiries are inquiries where a potential lender is reviewing your credit because you've applied for credit with them.** These include credit checks when you've applied for an auto loan, mortgage or credit card. . . . **A FICO score takes into account only *voluntary* inquiries that result from your application for credit.** The information about inquiries that can be factored into your FICO score includes:
>
> - Number of recently opened accounts, and proportion of accounts that are recently opened, by type of account.
> - Number of recent credit inquiries.
> - Time since recent account opening(s), by type of account.
> - Time since credit inquiry(ies).
> - **A FICO score does not take into account any involuntary inquiries made by businesses with whom you did not**

---

[1] "myFICO is the consumer division of FICO. Since its introduction 20 years ago, the FICO® Score has become a global standard for measuring credit risk in the banking, mortgage, credit card, auto and retail industries. **90 of the top 100 largest U.S. financial institutions use the FICO Score to make consumer credit decisions.**" http://www.myfico.com/Guest_Home.aspx (visited July 27, 2013) (emphasis added).

-4-

apply for credit, inquiries from employers, or your own requests to see your credit report

www.myfico.com/crediteducation/questions-inquiry-credit-score.aspx (visited July 26, 2013) (emphasis added).

17. Whether a consumer reporting agency or FICO categorizes a credit inquiry as "hard" or "soft" depends directly on the user of the report and whether the user classifies its request as a voluntary or involuntary request, *i.e.* whether the request was made in connection with a credit transaction initiated by the consumer.

18. URG's inquiry for Ms. Anderson's consumer report was involuntary, *i.e.* Ms. Anderson did not initiate a credit transaction with URG.

19. Nonetheless, Consumer Reporting Agencies, including but not limited to Experian, classified URG's inquiry for Ms. Anderson's credit report as a "hard inquiry."

20. URG's "hard" credit inquiry for Ms. Anderson's credit report was not made for a permissible purpose under 15 U.S.C. § 1681b.

21. Upon information and belief, URG made a hard inquiry for Ms. Anderson's consumer report in an attempt to collect a debt from her within the meaning of the FDCPA.

II. **Facts Relating to Southwest and Midland**

22. In conjunction with filing her bankruptcy petition, Ms. Anderson reviewed her consumer report.

23. She discovered that both Midland and Southwest were reporting negative information on her consumer report.

24. Midland reported a debt with a balance due of $697.00.

25. According to Ms. Anderson's consumer report, Midland was attempting to collect a debt from her that was originally issued by GE Retail Bank as a JC Penney credit card.

-5-

26. Ms. Anderson recalls having a JC Penney credit card that she used for personal and household purposes, making the Midland's reported negative information on Ms. Anderson's consumer report an attempt to collect a "debt" within the meaning of 15 U.S.C. § 1692a(5).

27. Upon information and belief, GE Retail Capital Bank charged off Ms. Anderson's JC Penney credit card in amount significantly less than $697.00.

28. Upon information and belief, Midland does not have either a contractual or statutory right to charge or accrue interest on Ms. Anderson's debt.

29. Southwest reported a debt with a balance due of $667.00.

30. According to Ms. Anderson's consumer report, Southwest was attempting to collect a debt that Ms. Anderson originally owed on a Cingular Wireless account.

31. Ms. Anderson recalls having a Cingular Wireless account for telecommunication services that that she used for personal and household purposes, making Southwest's reported negative information on Ms. Anderson's consumer report an attempt to collect a "debt" from her within the meaning of 15 U.S.C. § 1692a(5).

32. Southwest reported an account opening date of October 2012 with an original balance of $565.00.

33. Southwest increased the amount due on Ms. Anderson's Cingular Wireless debt by $202.00 in less than six months, which works out to a usurious interest rate of over 72% per annum.

34. Cingular Wireless LLC was a joint venture between SBC Communications and BellSouth that existed between 2000 and 2007.

35. Consequently, the debt originated by Cingular Wireless that Southwest reported on Ms. Anderson's consumer report was at least six years old.

-6-

36. Reporting an account opening date of October 2012 had the effect of re-aging the debt on Ms. Anderson's consumer report.

## CLAIMS FOR RELIEF

### I. Claims against United Recovery Group

#### A. Violations of the Fair Debt Collection Practices Act

37. The above-described actions by United Recovery Group constitute violations of the Fair Debt Collection Practices Act.

38. URG's violations of the FDCPA include, but are not limited to, the following:

   **(a)** URG violated 15 U.S.C. §§ 1692f and 1692e by, including but not limited to, making an impermissible hard credit inquiry for Ms. Anderson's credit report in an attempt to collect a debt from her;

   **(b)** URG violated 15 U.S.C. § 1692e(8) by reporting an opening date of October 2012, which re-aged the date the debt was scheduled to be removed from Ms. Anderson's consumer report and by making an impermissible hard credit inquiry Ms. Anderson's credit report in an attempt to collect a debt from her, which constitutes communicating credit information that URG knew or should have known was false; and

   **(c)** URG violated 15 U.S.C. § 1692e(10) by reporting an opening date of October 2012, which re-aged the date the debt was scheduled to be removed from Ms. Anderson's consumer report and by making an impermissible hard credit inquiry Ms. Anderson's credit report in an attempt to collect a debt from her, which constitutes a false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning Ms. Anderson.

#### B. Violation of the Fair Reporting Act

39. The foregoing acts and omissions of URG constitute violations of the FCRA, including, but not limited to:

   URG knowingly and intentionally violated 15 U.S.C. § 1681b by falsely and impermissibly requesting that one or more consumer reporting agencies furnish it with a copy of Ms. Anderson's consumer report. URG's request was impermissible because URG's request falsely identified that the purpose of its request was being made in connection with a credit or insurance transaction that was initiated by Ms. Anderson. URG's purpose in requesting Ms. Anderson's consumer report was also

-7-

impermissible because the request was made after Ms. Anderson filed for Chapter 7 Bankruptcy relief. So URG could not have requested Ms. Anderson's consumer report for purposes of collecting a debt. Therefore, URG is liable to Ms. Anderson for statutory damages of $1,000 or the actual damages she has sustained by reason of its violation of the FCRA, whichever is greater, in an amount to be determined by the trier of fact, together with an award of punitive damages in an amount to be determined by the trier of fact, as well as her reasonable attorney's fees, and she may recover therefore pursuant to 15 U.S.C. § 1681n.

Or in the alternative,

URG negligently violated 15 U.S.C. § 1681b by falsely and impermissibly requesting that one or more consumer reporting agencies furnish it with a copy of Ms. Anderson's credit report. URG's request was impermissible because URG's request falsely identified that the purpose of its request was being made in connection with a credit or insurance transaction that was initiated by Ms. Anderson. URG's purpose in requesting Ms. Anderson's consumer report was also impermissible because the request was made after Ms. Anderson filed for Chapter 7 Bankruptcy relief. So URG could not have requested Ms. Anderson's consumer report for purposes of collecting a debt. Therefore, URG is liable to Ms. Anderson for the actual damages she has sustained by reason of its violation of the FCRA in an amount to be determined by the trier of fact, as well as her reasonable attorney's fees, and she may recover therefore pursuant to 15 U.S.C. § 1681o.

## II. Claims against Southwest Credit Systems, LP

40. The above-described actions by Southwest Credit Systems, L.P. constitute violations of the Fair Debt Collection Practices Act.

41. Southwest's violations of the FDCPA include, but are not limited to, the following:

(a) Southwest violated 15 U.S.C. § 1692f(1) by attempting to collect a debt that is not authorized by agreement or permitted by law, including but not limited to, adding interest and/or fees that it had no present right to collect on an alleged debt that Southwest reported to consumer reporting agencies;

(b) Southwest violated 15 U.S.C. § 1692e(2)(A) by including but not limited to, reporting a false and misleading account opening date and adding usurious interest and/or fees that it had no present right to collect on an alleged debt that Southwest reported to consumer reporting agencies, including but not limited to Experian. This constitutes the false representation of the character, amount, or legal status of the debt allegedly owed by Ms. Anderson; and

(c) Southwest violated 15 U.S.C. § 1692e(8) by including but not limited to, reporting a false and misleading account opening date and adding

-8-

usurious interest and/or fees that it had no present right to collect on an alleged debt that Southwest reported to consumer reporting agencies, including but not limited to Experian. This constitutes communication of credit information that Southwest knew or should have known was false.

### III. Claims against Midland Funding, LLC

42. The above-described actions by Midland Funding, LLC constitute violations of the Fair Debt Collection Practices Act.

43. Midland's violations of the FDCPA include, but are not limited to, the following:

(a) Midland violated 15 U.S.C. § 1692f(1) by attempting to collect a debt that is not authorized by agreement or permitted by law, including but not limited to, adding interest and/or fees that it had no present right to collect on an alleged debt that URG reported to consumer reporting agencies;

(b) Midland violated 15 U.S.C. § 1692e(2)(A) by including but not limited to, adding interest and/or fees that it had no present right to collect on an alleged debt that Midland reported to consumer reporting agencies, including but not limited to Experian. This constitutes the false representation of the character, amount, or legal status of the debt allegedly owed by Ms. Anderson; and

(c) Midland violated 15 U.S.C. § 1692e(8) by including but not limited to, adding interest and/or fees that it had no present right to collect on an alleged debt that Midland reported to consumer reporting agencies, including but not limited to Experian. This constitutes communication of credit information that Midland knew or should have known was false.

-9-

WHEREFORE, Plaintiff Christine Anderson requests that the Court grant the following relief in her favor and against Defendants United Recovery Group, Southwest Credit Systems, Inc., and Midland Funding, LLC:

1. Award Plaintiff actual damages;
2. Award Plaintiff statutory damages;
3. Award Plaintiff reasonable attorney's fees;
4. Award Plaintiff costs; and
5. Such other relief as may be just and proper.

Respectfully submitted,

*/s/ James R. McKenzie*

**James McKenzie**
*James R. McKenzie Attorney, PLLC*
4055 Shelbyville Road
Suite B
Louisville, KY 40207
Tel: (502) 371-2179
Fax: (502) 257-7309
jmckenzie@jmckenzieatty.com

**James H. Lawson**
*Lawson at Law, PLLC*
4055 Shelbyville Road
Suite B
Louisville, KY 40207
Tel: (502) 473-6525
Fax: (502) 473-6561
james@kyclc.com

-10-

AOC-105  
Rev. 1-07  
Page 1 of 1  
Commonwealth of Kentucky  
Court of Justice  
CR 4.02 CR Official Form 1

CASE NO. 13C-3721

Kenton District Court

Kenton County  
Division 3

**CIVIL SUMMONS**

CHRISTINE ANDERSON     PLAINTIFF

v.

UNITED RECOVERY GROUP, *et al.*     DEFENDANTS

Serve: United Recovery Group  
       Registered Agent: Robert Bruce  
       4549 Francis Ave.  
       Chino, CA 91710

**THE COMMONWEALTH OF KENTUCKY  
TO THE ABOVE-NAMED DEFENDANT(S):**

     You are hereby notified a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf** within 20 days following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached Complaint.

     The name(s) and address(es) of the party or parties demanding relief against you are shown on the document delivered to you with this Summons.

Date: ~~August~~ 6, 2013  
        Sept.

By: _John C. Middleton_ , Clerk  
      _JJ_ D.C.

**Proof of Service**

This summons was served by delivering a true copy and the Complaint (or other initiating document) to:

_____

This _____ day of _____, 20 ____.

Served by: _____

_____ Title



# *Lawson at Law, PLLC*

*Making the law work for you*

| | | | |
|---|---|---|---|
| James H. Lawson | 9/4/2013 | Tel: | (502) 214-3120 |
| 10600 Timberwood Cir./Suite 1 | | Fax: | (502) 473-6561 |
| Louisville, KY 40223 | | Dir. Dial: | (502) 473-6525 |
| james@kyclc.com | | www.lawsonatlaw.com | |

Kenton District Court Clerk
Kenton District Clerk
230 Madison Ave
Covington, KY 41011

RE: *Christine Anderson v. United Recovery Group, et al.*

Dear Clerk:

Please find enclosed an original and two copies of a complaint we'd like you to file in the above-referenced case, three summons for each defendant, and a check for $75.50 to cover the filing fee. Please return one complaint and one set of summonses in the enclosed self-addressed stamped envelope. We will take care of serving the complaint.

Thank you so much for your help in this matter. If you have any questions about this request, please contact me on my cell phone ((502)-810-7631) at your earliest convenience.

Sincerely,

James H. Lawson